## Peterson v. Louisville & Nashville Railroad Company.

(Decided June 25, 1926.)

### Appeal from Warren Circuit Court.

1. Railroads—Instruction that Railroad Owed Plaintiff no Duty Until After Trainmen Saw Peril of Automobile on Crossing Held Properly Refused.—In action for damages to plaintiff's automobile when struck by train at crossing, instruction that defendant owed plaintiff no duty until after its agents in charge of approaching train saw position or peril of automobile on track held properly refused.

2. New Trial—Inclusion by Plaintiff's Counsel of Refused Instructions with Those Handed to Jury at Court's Request Held "Unavoidable Casualty and Misfortune," Justifying a New Trial.—Where plaintiff's counsel, at court's request, handed to jury what he thought were instructions given, but through accident, handed them two instructions which had been refused, and word "refused" appeared after only one of them, held that such accident was "an unavoidable casualty and misfortune" on part of plaintiff, justifying a new trial.

**3.**   Trial—It is not error to submit plaintiff's case disjunctively.

SIMS & HERDMAN for appellant.

RODES & HARLIN, WOODWARD, WARFIELD & HOBSON and ASHBY M. WARREN for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

On February 14, 1925, about midnight, the automobile of the appellant which was stalled on the railroad track of the appellee at Richardson's crossing where the Louisville and Nashville turnpike crosses appellee's right of way near the county line between Hart and Barren counties, was run into and demolished by a freight train. It was the theory of the appellant that on account of the defective crossing at this point his automobile had become stalled on the crossing and that by reason of this fact and also by reason of the further fact that appellee's agents in charge of the freight train which demolished his car had failed to keep a proper lookout for those who might be on this public crossing and had failed to stop the train when, had they been keeping such a proper lookout, they could have done so by the exercise of ordinary care and in time to avoid the collision, his machine had been destroyed. It was the theory of the appellee that the appellant in the night time had carelessly missed the crossing and had run into and through a ditch alongside the railroad's right of way; that he had become stalled with the front wheels of his machine on the railroad right of way and off the crossing, and with the hind wheels in the ditch, for which reason it owed appellant no lookout duty as he was not on the public crossing. The jury found a verdict for the appellee and from the judgment entered on that verdict this appeal is prosecuted.

The main ground relied on for reversal is a claimed unavoidable casualty and misfortune on the part of appellant in the trial of the case. The trial court gave to the jury five instructions. Four of these were those offered by appellant, with certain modifications made by the court over appellant's objections. The fifth was an instruction on contributory negligence, to which the appellant also objected. The appellee offered two instructions which were refused by the court. They were written on one side of a sheet of paper of legal size with a red line running down the left hand side, leaving a margin.

On the outside of this margin, written in pencil, are letters A and B opposite the two paragraphs respectively, it being the obvious intention that the first paragraph should be instruction A and the second paragraph instruction B. In addition to the bill of exceptions, the original instructions, both those given and those refused, have been brought to this court and from an inspection of them we find that the court did not mark "given" as claimed by the appellee in its brief on any of the instructions which were given, but that immediately underneath the typewritten matter of the refused instructions he wrote the words "refused by the court." Without explanation, this annotation would appear to apply to instruction B only. Instruction A offered by appellee reads thus:

> "The court instructs the jury that the defendant company owed the plaintiff no duty until after its agents and servants in charge of the approaching train saw the position or peril of the automobile upon the track."

The court properly refused this instruction. Now, the unavoidable casualty and misfortune complained of came about in this fashion. The court had handed to the official reporter, who had taken down the evidence in this case, the paper on which were written instructions A and B which had been refused by him, and also two sheets of paper on which were written the five instructions which he had given to the jury. The official reporter left the courtroom but left the papers containing the given and refused instructions lying on her desk. After appellant's counsel, who had the closing speech, had concluded his argument to the jury, the court told him to hand the instructions to the jury. Without being aware that the refused instructions were among the instructions lying on the stenographer's desk, the appellant's counsel handed to the jury what he thought were the instructions the court had given to the jury; but not only did he do that, but also, through accident he handed to the jury the two instructions which had been refused by the court. The bill of exceptions makes it perfectly plain that neither the judge nor appellant's attorney was aware of what had happened or knew that the refused instructions were among the instructions handed to the jury until after the verdict of the jury had been returned, the jury discharged and the appellant was preparing his motion and

grounds for a new trial. The verdict of the jury was written on the back of the sheet of paper on which the refused instructions were written. It seems clear to us that the inclusion of the refused instructions with the instructions given was a plain accident and misfortune on the part of appellant's counsel. He had not placed the papers on the reporter's desk. He was asked by the court to hand the instructions to the jury. The papers which he did hand to the jury appeared to be the instructions, but the official stenographer had placed with them the refused instructions and the attorney did not sort them over again. In the heat and natural anxiety of a jury trial, and especially at the conclusion of an argument, counsel, when suddenly called on by the court to hand some papers to the jury, is not to be blamed because inadvertently he may hand the jury among such papers instructions which have been refused but which have been mixed up with such papers by a third party. That the possession of these instructions by the jury was prejudicial we think also true. Cf. 29 Cyc. 808. Appellee correctly argues that the court read the given instructions to the jury. From this, appellee concludes that the jury, though it had possession of the papers on which the refused instructions were written, knew they had been refused because not read to them and hence such possession could not have influenced the verdict. It must be remembered, however, that the instructions which the court gave and read to the jury comprise two sheets of legal size paper almost solidly written; that, between the time when they were read to the jury and the jury retired to its room to consider the case, the jurymen had also had to listen to two earnest arguments of some duration. It would require an exact and nice memory to remember under such circumstances precisely what the court had said was the law of the case. To avoid the failure to so remember, our law requires that, if requested, instructions be in writing and that such instructions be sent to the jury room along with the jurors. The purpose of this requirement is that the jury may not have to depend on its uncertain recollection as to what the court said was the law of the case, but that it may always have at hand that law by which to measure the liability of the parties under the facts as found by it. No explanation was given to the jury that the annotation "refused by the court" after instruction B applied to any other instruction than the one it seemed to apply to only. To all

outward appearances, instruction A .was as much a part of the law of the case as any of the preceding five. Its possession by the jury as seemingly a part of the law of the case was highly prejudicial. 29 Cyc. 809. It therefore · results' that this accident, caused by the inadvertence of appellant's counsel and the court, was good ground for the new trial requested by the appellant and that. the court erred in refusing it.

Appellant also complains of the way. the court modi-·. fied instruction number one which he offered. His complaint is well founded. On the next trial of the case, if the evidence be substantially the same as on the last trial, the court should give instructions number one and two as offered on the last trial without modification, and should then give an independent instruction to the effect that, unless the jury. so believe as set out in instruction number one or two, they should find for the defendant. Appellee's suggestion that appellant is not entitled to have his case thus submitted disjunctively is fully answered in the case of L. & N. v. Goodman, 210 Ky. 13, 273 S. W. 526, which, on this phase, is remarkably like the instant case.

Appellant lastly contends that no instruction on contributory negligence should have been given. In this, appellant is in error. There was ample evidence in the record, not only by way of physical facts, but also by way of admissions made on the morning after the accident by the appellant as to the way in which the accident happened, to substantiate the appellee's theory of this case. If appellee's theory be correct, appellant's predicament was caused by his own negligence and carelessness. Under the facts of this case as claimed by appellee, appellant may not complain of a general instruction on contributory negligence.

For the reasons hereinbefore set out, the judgment in this case is reversed, with instructions to grant appellant a new trial consistent with this opinion.